## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | ) | | |
| | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| v. | ) | Civil Action No. | |
| | ) | | |
| SEVEN THOUSAND, TWO | ) | | |
| HUNDRED DOLLARS ($7,200.00) | ) | | |
| IN UNITED STATES CURRENCY | ) | | |
| | ) | UNDER SEAL | |
| Defendant. | ) | | |
| | ) | | |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

**COMES NOW,** the plaintiff, the United States of America, by and through the United States Attorney for the District of Columbia, to bring this verified complaint for forfeiture in a civil action *in rem* against $7,200.00 in United States currency, which law enforcement seized on April 7, 2022.  In further support of its cause, plaintiff states as follows:

## NATURE OF THE ACTION AND DEFENDANT *IN REM*

1.      This is a civil action *in rem* for the forfeiture of the defendant property to the use and benefit of the plaintiff, the government of the United States of America. Pursuant to 21 U.S.C. § 881(a)(6), property is subject to forfeiture to the United States if it is "moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance, . . . proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate" any violation of Title II of Pub. L. 91-513, commonly called the Controlled Substances Act, as amended, codified at 21 U.S.C. § 801, et seq.

1

2.      The defendant property consists of $7,200 in U.S. currency (Asset ID: 22-DEA-690443) seized during the execution of a search and seizure warrant at the residence of Harry Lewis Sernaker ("Sernaker") which is located in the 2000 block of Columbia Road, NW,  in Washington, D.C. The defendant property is described more fully as **SEVEN THOUSAND TWO HUNDRED DOLLARS ($7,200.00) IN UNITED STATES CURRENCY (the "Defendant Property").**

3.      The Defendant Property  has been deposited into the Seized Asset Deposit Fund Account, held by the U.S. Marshals Service.  The United States has the defendant *in rem* in its possession, custody, and control.

4.      The United States brings this action *in rem* in its own right to forfeit all right, title and interest in the Defendant Property.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, over an action for forfeiture under 28 U.S.C. § 1355(a), and over this particular action under 21 U.S.C. § 881.

6.      This Court has *in rem* jurisdiction over the Defendant Property under 28 U.S.C § 1355(b). This civil action *in rem* for forfeiture is governed by 21 U.S.C. § 881, 18 U.S.C. § 983, the Federal Rules of Civil Procedure, and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, particularly Rule G.  Upon the filing of this complaint, the plaintiff requests the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the Defendant Property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

7.      Venue is proper within this judicial district under 28 U.S.C § 1355(b)(1) and 28 U.S.C § 1395  because this is a forfeiture action or proceeding brought in the district court for the

district in which any of the acts or omissions giving rise to the forfeiture occurred, and because a civil proceeding for the forfeiture of property may be prosecuted in the district in which the property is found.

## STATEMENT OF FACTS

8.    Prior to April 7, 2022, Sernaker, a licensed physician, held a DEA registration which permitted him to prescribe controlled substances.  He owned and operated a "pill mill" clinic named "South Baltimore Pain Center" (the "Clinic") located at 1147 S. Hanover Street in Baltimore, Maryland, and was the sole prescriber for that clinic. The Clinic operated a couple of weeks each month.  One or two days a month, Sernaker also saw patients in unmarked office space in Hagerstown, Maryland, seeing patients from Maryland, Pennsylvania, Virginia, and West Virginia, with some driving as many as four hours each way.  Both the DEA and Department of Health and Human Services, Office of the Inspector General ("HHS-OIG") investigated Sernaker, the Clinic, various patients of the Clinic, and various drug trafficking organizations that used the Clinic to illegally obtain and distribute oxycodone and other controlled substances.   The investigation included Court-ordered intercepted wire communications, surveillance, the use of informants and under-cover personnel, as well as simple data analysis and review of state and federal records.

9.    As measured by the daily morphine milligram equivalent dose, Sernaker, in 2017, was the highest-risk prescriber of opioid prescriptions in Maryland, and the second highest-risk prescriber in the entire United States.  Sernaker prescribed an average patient the equivalent of 312 milligrams of morphine per day, which was approximately 3.5 times the daily maximum recommended by the Centers for Disease Control ("CDC").

10.     Despite various professional reprimands by the Maryland Board of Physicians, Sernaker continued writing large volumes of prescriptions for oxycodone and Oxycontin.   As recently as January 2022, an online pharmacy and pharmacy benefits manager identified Sernaker for "concerns of inappropriate prescribing" of "opioid analgesics" and opened an investigation.

11.     Sernaker continued to prescribe large doses of opioid medications until he surrendered his DEA registration on the date of the search warrant, April 7, 2022.

12.     The law enforcement investigation revealed that Sernaker's medical practice was almost exclusively a cash business.  He charged between $200 and $500 per visit and did not take insurance.  New patients had to be vouched for by someone Sernaker trusted.

13.     A confidential source advised that Sernaker would pay two individuals to fabricate Magnetic Resonance Imaging tests and then Sernaker would then place these fabricated MRIs into his patients' files.  Sernaker also asked the confidential source to procure sexual partners for Sernaker in exchange for cash or opiate prescriptions.

14.     Further investigation revealed that of the 726 known patients of Sernaker, 26 had suffered from an overdose.  Seven of the overdoes were fatal, 18 were non-fatal, and one was undetermined.

15.     Recovery of trash from the Clinic on March 24, 2021 reflected several ripped-up prescriptions written on Sernaker's prescription pad. They contained two different handwritings, and two different inks. The signature was in blue ink and was consistent with Sernaker's signature from other documents.  The patient name and prescription information was in black ink and a different handwriting.  Based on their experience, investigators have concluded that Sernaker signed blank prescription pads and left them at the Clinic for staff to use to write prescriptions in his absence.

16.     The investigation revealed that Sernaker was absent from the Clinic much of the time.  Based on records obtained by U.S. Customs and Border Protection ("CBP") concerning Sernaker's international travel and border crossings, Sernaker was out of the country on dates on which he purportedly wrote 566 prescriptions for pain medications.

17.     From March 8, 2021 to April 7, 2022, investigators monitored a covert, video recording device focused on the Clinic.  Sernaker was rarely at the Clinic, and rarely met patients for face-to-face office visits.  However, the patient charts and prescriptions were stored at the medical practice. Intercepted communications indicate that in Sernaker's absence, at least one staff person would increase patient's dosage, forge records regarding patients' urine samples, warn patients of upcoming urine tests, and dispense prescriptions to individuals known to be illegally distributing the medication.

18.     On April 7, 2022, the DEA and HHS-OIG executed search and seizure warrants at the Clinic and Sernaker's residence, the latter warrant issued by U.S. Magistrate Judge G. Michael Harvey in the District of Columbia.  Located in the residence were partial prescription pads, patient files, a prescription pill bottle in another individual's name who did not live at that address containing Oxycontin, numerous pills of various shapes and sizes, and $7,200.00 U.S. Currency (Asset ID 22-DEA-690443).  The $7,200.00 U.S. Currency consisted of seven paper clipped stacks of $100 bills, which were located in a wallet in a tall dresser in the master bedroom.  The DEA seized the U.S Currency as proceeds of illegal distribution of oxycodone and other prescription medications.

19.     On September 13 and 23, 2022, proffer sessions were conducted with a former employee of Sernaker (the "Employee").  The Employee advised that Sernaker accepted only cash and credit cards, but no insurance.  In addition to pain management patients, Sernaker also

prescribed Suboxone to 12 to 15 patients, whom he charged $220 cash per prescription. The Employee explained that Sernaker only took the Suboxone patients' money and called in their prescription. He did not do urine tests for the Suboxone patients and some patients he had not seen in 18 months. The Employee advised that Sernaker did not put Suboxone patients on the schedule.

20.     Sernaker kept the cash proceeds from the pain management patients and the Suboxone patients separate. Specifically, Sernaker would have staff collect the cash received from pain patients in one envelope, include a deposit slip and daily schedule, and seal the envelope. Prior to COVID-19, Sernaker would take the envelope to the bank to deposit. After COVID-19, Sernaker would allow an employee to take the envelope to the bank to deposit, since he was usually not in the office. In contrast, Sernaker had office staff collect the money received from the Suboxone patients. He would have them rubber band the cash to the deposit envelope and then he would keep that cash. After COVID-19, that cash would be put into his desk drawer and would accumulate until he was next in the office and collected it. Staff did not prepare a deposit slip for this money and did not include it in the regular deposits made. The Employee advised that Sernaker was last in the office approximately two weeks prior to the search and seizure warrants executed on April 7, 2022.

21.     After the DEA seized the currency, it initiated administrative forfeiture proceedings. Sernaker filed an administrative claim to the entire $7,200.00, and signed it under penalty of perjury. In the claim form that Sernaker submitted, he stated that "the currency was accumulated savings from [his] after-tax income practicing medicine. This income derived primarily from [his] salary as an employee of the South Baltimore Pain Center treating patients with chronic pain syndromes, with a very small part derived from the separate practice of treating patients with opiate addiction."

22.     No other claims were made as to the Defendant Currency.  The time for filing a claim under 18 U.S.C. § 983(a)(2)(B) has expired.

<u>**COUNT ONE**</u>

23.     The factual statements made in paragraphs 1 through 22 are re-alleged and incorporated by reference herein.

24.     The Defendant Property is subject to civil forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes: (i) moneys furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act; (ii) proceeds traceable to such an exchange; or (iii) moneys used or intended to be used to facilitate a violation of the Controlled Substances Act, 21 U.S.C. § 801, *et. seq.*

25.     As such, the Defendant Property, constituting $7,200.00 in United States currency, is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

**WHEREFORE**, the plaintiff, the United States of America, respectfully requests that, as to the above-referenced Defendant Property, due process and warrant of arrest *in rem*  issue according to law; that, pursuant to law, notice be provided to all interested parties to appear and show cause why the forfeiture should not be decreed and the defendant property be condemned as forfeited to the United States of America; and for such other and further relief as this Court may deem just, necessary, and proper.

Dated: September 28, 2022

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

Arvind K. Lal, D.C. Bar No. 389496
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
Arvind.Lal@usdoj.gov
(202) 252-7688

Attorney for the United States of America

## <u>VERIFICATION</u>

I, James L. Vermont, a Task Force Officer with the Drug Enforcement Administration, , declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known to me and/or furnished to me by other law enforcement agents and that everything contained therein is true and correct to the best of my knowledge and belief.

Executed: September 28, 2022

_____
James L. Vermont
Task Force Officer
Drug Enforcement Administration